**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DARRELL J. WOODS, SR. | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:18-CV-354 RLW |
| | ) |
| MICHELE BUCKNER, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Darrell J. Woods, Sr.'s pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1.) For the following reasons, the Court will deny the Petition.

### Procedural History

Petitioner is currently incarcerated at the South Central Correctional Center in the Missouri Department of Corrections pursuant to a judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. On December 5, 2013, a jury found Petitioner guilty of one count of second-degree assault, one count of unlawful use of a weapon, one count of third-degree assault, and one count of tampering with a victim. On March 4, 2014, the trial court sentenced Petitioner to twelve years for second-degree assault, seven years for unlawful use of a weapon, one year for third-degree assault, [1] and seven years for tampering with a victim, all terms to run concurrently.

---

[1] The third-degree assault charge and conviction is a misdemeanor. "By its own terms, relief under Rule 29.15 exists only for felony convictions and excludes relief from misdemeanor convictions. This includes cases in which a movant is convicted both of one or more felonies along with one or more misdemeanors." Adams v. State, 509 S.W.3d 880, 883 (Mo. App. E.D. 2017) (citing to, among other things, Rule 29.15(a)).

Petitioner appealed his conviction to the Missouri Court of Appeals and raised three claims of trial court error. The Missouri Court of Appeals affirmed. State v. Woods, 477 S.W.3d 9 (Mo. Ct. App. 2015) (per curiam) (unpublished memorandum) (Resp. Ex. E, ECF No. 15-5).

Petitioner thereafter timely filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 (ECF No. 15-6 at 4). Appointed counsel filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing (ECF No. 15-6 at 20), which raised three claims of ineffective assistance of counsel. The motion court denied the postconviction motion without an evidentiary hearing on September 29, 2016 (ECF No. 15-6 at 45). The Missouri Court of Appeals affirmed the motion court's denial of postconviction relief on October 24, 2017. State v. Woods, 531 S.W.3d 108 (Mo. Ct. App. 2017) (per curiam) (unpublished memorandum) (Resp. Ex. I, ECF No. 15-9).

## Grounds Raised

On March 1, 2018, Petitioner filed the instant Petition for habeas relief in federal court. (ECF No. 1.) Respondent filed a response in opposition with supporting exhibits on June 21, 2018. (ECF No. 15). Petitioner filed a Reply to Show Cause Order in support of his Petition on November 30, 2018 (ECF No. 22).[2] Petitioner raises six grounds for relief in the Petition:

(1) The trial court plainly erred in denying his timely, clear, and unequivocal request to represent himself;

(2) The trial court clearly erred in denying his motion to dismiss the case for a violation of his right to a speedy trial;

(3) The trial court clearly erred in denying his motion for judgment of acquittal at the close of all the evidence;

---

[2]Petitioner's Reply includes a Statement of Facts (ECF No. 22 at 3-9), but the Reply is not verified or signed under penalty of perjury pursuant to 28 U.S.C. § 1746. As a result, it is not a sworn statement and the Court does not treat it as evidence.

(4) Trial counsel was ineffective for failing to file a motion in limine and to object at trial to the admission of evidence that Petitioner possessed marijuana on the day in question, which was inadmissible evidence of an uncharged crime;

(5) Trial counsel was ineffective for failing to move to admit into evidence a letter written by victim M.B. to Petitioner while he was incarcerated and awaiting trial; and

(6) Trial counsel was ineffective for failing to object and to move for a mistrial based on the prosecutor's closing argument.

Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.[3]

## Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows:

> The following evidence was presented at Movant's jury trial. Movant and M.B. met in the fall of 2011 and began dating. The following January, M.B. rented an apartment in her name in the City of St. Louis, and Movant began living there with M.B. Over the next few months, the parties' relationship became stressful because Movant was frequently gambling.
>
> On March 12, 2012, Movant was at the apartment and looking for some money he had left there previously. M.B. told Movant she used the money to pay the rent, and Movant told M.B. she owed him the money. M.B. went to the store and when she returned to the apartment, Movant cornered M.B. and again told her she owed him the money. M.B. testified Movant's demeanor was "very stern" and it scared her, so she tried to avoid making eye contact.
>
> M.B. tried to diffuse the situation by going into the kitchen and cutting up some produce. Movant then said to M.B., "You don't hear me," and he moved closer to M.B. M.B. testified she was "pretty scared" and avoided looking at Movant. After M.B. told Movant, "I hear you," Movant grabbed M.B. and slammed her into the floor.
>
> M.B. got up and ran for the front door, but before she could reach it, Movant grabbed her by her bra and dragged her to the dining room. Movant then grabbed M.B. by the back of her neck and slammed her into the floor a second time. M.B.

---

[3]A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)).

landed on her face and heard a hollow sound when her facial bones hit the floor. M.B. got back up, and Movant said, "Why won't you stay down?"

M.B. then attempted to run towards the back door, but Movant stopped M.B. again by grabbing her by her bra and then slamming her into the floor a third time. Movant said to M.B., "You['re] not getting out. They can't help you. Your neighbors outside, they can't help you." M.B. said, "What you gonna do, kill me?" Movant then replied, "No, I'm going to break your jaw . . . and black [sic] both your eyes."

M.B. got up, walked into the bedroom, and sat on the bed to collect her thoughts. Movant then came into the bedroom holding the knife M.B. had been using earlier to cut up the produce. M.B. testified Movant was holding the knife in a manner in which he could have stabbed her with it; M.B. was "more than afraid" and began thinking she would not see her daughter again. M.B. tried to roll over to the other side of the bed, but before she could, Movant jumped on the bed and began choking her, pushing her head down so she could not breathe.

M.B. managed to get her knees to her chest and kick Movant away. She tried to run out of the room, but she slipped on the floor. M.B. testified Movant then punched M.B. multiple times in the back of her head "[a]s quick and hard as he could." He then sat back on the bed, where he smoked a cigarette and rolled a marijuana joint, while the knife was on the bed beside him. M.B. went into her daughter's room to put on a shirt and socks, and then she was able to jump out of a window and run into an alley where she called 911 on her cell phone.

Officer Brandy Gates with the City of St. Louis Metropolitan Police Department responded to M.B.'s call and described her as "very distraught," in disarray, "shaking really nervously," and not wearing shoes. Officer Gates also noticed M.B.'s arms were red, she had several red markings on her neck and hands, and she had bumps and knots on her head.

When officers went inside M.B.'s apartment, Movant was gone but the knife was still on the bed. Officer Gates described the knife as a chopping knife with a five or six-inch blade, and M.B. told the officer Movant had threatened to kill her with the knife if she called the police.

The day after the incident, Movant called M.B. to tell her he was going to return to the apartment to gather his belongings. M.B. called the police to let them know, and officers came to the apartment, found Movant there, and arrested him.

Movant sent a series of letters to M.B. from jail, and the letters were admitted into evidence. One letter encouraged M.B. to stop responding to calls from police and prosecutors and urged her to contact his public defender to tell him she did not want to press charges. Another letter asked M.B. to contact the prosecutor and drop the charges. And in yet another letter: Movant suggested M.B.

4

suffered her injuries when she jumped out of the window; Movant urged M.B. to drop the charges against him and work with his lawyers; and Movant closed the letter with stating, "I need you to take this seriously and respond ASAP so I can coach you through this." M.B. testified at trial that Movant's letters made her feel harassed and scared.

Movant testified in his own defense at his trial, and he denied assaulting M.B. or threatening her with a knife. Movant claimed M.B. was falsely accusing him to get out of paying money she owed him, and he testified the letters he wrote to M.B. were intended to encourage her to tell the truth.

After hearing the above evidence, the jury found Woods guilty of all four charged offenses. The trial court entered a judgment in accordance with the jury's verdict and sentenced Woods, a prior and persistent offender, to a total of twelve years of imprisonment.

(Resp. Ex. I, ECF No. 15-9 at 2-4).

## Legal Standard

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). See also Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

5

the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of the law must be objectively unreasonable. Id. at 409-11; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

6

Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). To obtain habeas relief from a federal court, the petitioner must show that the challenged State court ruling "rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)). This standard is demanding and "difficult to meet." Id.

## Procedurally Defaulted Claim

A.  Ground One – Trial Court Error – Denial of Right to Self-Representation

In Ground One of his Petition, Petitioner claims the trial court plainly erred in denying his timely, clear, and unequivocal request to represent himself. Although Petitioner raised this claim on direct appeal, the Missouri Court of Appeals stated that he did not raise the claim in his motion for new trial and therefore did not preserve the claim of error. (ECF No. 15-5, Resp. Ex. E at 4.) A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. Jolly, 28 F.3d at 53. The Missouri Court of Appeals reviewed the unpreserved claim for plain error and found none. (ECF No. 15-5, Resp. Ex. E at 4-6.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015). Instead, this Court may review the merits of the claim only if

cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman, 501 U.S. at 750.

Petitioner asserts that the claim is not procedurally defaulted because the Missouri Court of Appeals reviewed it for plain error, but this is incorrect under Eighth Circuit precedent. Clark, 780 F.3d at 874. Petitioner does not expressly allege cause for his default, but states in his Reply that counsel filed a motion for new trial on his behalf "but did not include any claim about the denial of [his] . . . motion to proceed pro se" (ECF No. 22 at 15). The Court liberally interprets this statement as an assertion that ineffective assistance of counsel in failing to include the claim in the new trial motion caused Petitioner's default of this claim.

Ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim. See id. at 452 ("[A] claim of ineffective assistance, we said, generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing Murray v. Carrier, 477 U.S. 478, 489 (1986)) (internal citations omitted). Here, Petitioner did not raise an accompanying ineffective assistance of counsel claim for failure to present the procedurally defaulted claim. In addition, under Strickland v. Washington, 466 U.S. 668, 687 (1984), there must be an assessment of counsel's performance and prejudice in order to determine whether a Sixth Amendment violation has occurred. When there are no specifics, as here, where Petitioner at best makes only a generic assertion that ineffective assistance of counsel is the cause of his procedural default, the Court

cannot engage in the analysis of counsel's deficiency or any resulting prejudice in order to establish the Sixth Amendment violation that is necessary for ineffectiveness to count as cause under Edwards v. Carpenter. For these reasons, Petitioner fails to demonstrate cause for his procedural default.

If a prisoner fails to demonstrate cause, the court need not address prejudice. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007). Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has presented no new evidence of actual innocence; nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997).

Accordingly, the claim raised in Ground One of Petitioner's Petition is procedurally barred from federal habeas review and will be denied.

### Claims Addressed on the Merits

The record shows Petitioner properly raised the following claims in State court and that the Missouri Court of Appeals, on review of the merits of the claims, denied relief. The Court turns to the merits of these claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

A. Ground Two – Trial Court Error – Speedy Trial

In Ground Two, Petitioner claims that the trial court violated his right to a speedy trial in violation of the Fifth, Sixth, and Fourteenth Amendments, based on a 630-day delay in bringing him to trial from the date of his arrest on March 13, 2012, until commencement of trial on December 4, 2013.

The Missouri Court of Appeals summarized the facts relevant to this claim in its denial of

Petitioner's direct appeal:

> The history of this case is as follows: Defendant was arrested and taken into custody on March 13, 2012 and was then charged by complaint on March 14, 2012. On May 10, 2012, the State moved for a continuance on the grounds that the matter was pending before the grand jury, which had not yet returned an indictment. Also, on May 10, 2012, a grand jury indictment was entered, and the case was transferred from the associate circuit court division to the circuit court division.
>
> Defendant was arraigned on May 24, 2012, and the case was scheduled for trial on July 2, 2012. The trial was continued from that date to August 27, 2012 on the court's motion.
>
> The court ordered a second continuance, on its own motion, to November 13, 2012 because both defense counsel and the prosecutor were in trial on other cases. Then the prosecutor was sick the week the trial was to take place, and the court ordered a continuance, on its own motion, to January 14, 2013. The court did not reach the case in January due to the assignment of cases holding a higher priority, and it continued the case to February 25, 2013.
>
> The court again did not reach the case in the February setting due to the assignment of higher priority cases, and it continued the case to April 15, 2013. The case did not go to trial on that date because the prosecutor was in trial on another case, and the court set a new trial date of June 3, 2013.
>
> Defense counsel filed a request for a speedy trial on May 7, 2013. On May 31, 2013, the prosecutor filed a memorandum with the court noting that Defendant had filed a pro se motion for speedy trial that was received by the prosecutor on April 22, 2013. The prosecutor requested that the case be placed on a special docket and assigned to a trial division at the earliest opportunity.
>
> The court continued the trial to July 15, 2013, due to the prosecutor being in trial on another case. The court next granted, over Defendant's objection, the State's motion for a continuance due to the prosecutor being unavailable for trial because of a scheduled vacation. The case was continued to August 26, 2013.
>
> On July 31, 2013, defense counsel filed a motion to dismiss due to a speedy trial violation. The motion was taken up at a hearing on August 8, 2013 and denied.
>
> On August 26, 2013, the day trial was to begin, Appellant filed his motion to proceed pro se, which was heard and denied that same day. The case was then transferred to a different division because there were too many ineligible jurors to proceed to trial. A new trial date of October 15, 2013 was set.

The court continued the case to December 2, 2013, due to the prosecutor being in trial on another case, and then reset it for December 3, 2013.

Defense counsel filed a second motion to dismiss for speedy trial violation on December 3, 2013, and the court took it up the same day. Defense counsel told the court Defendant had been unable to make bond and had been incarcerated since March 13, 2012. Defense counsel also noted the defense had not requested any continuances and the delays were due to the court's centralized docketing system and the prosecutor trying other cases. Defense counsel faulted the prosecutor's office for assigning a limited number of prosecutors to handle domestic assault cases, saying that practice resulted in those cases taking an unreasonable amount of time to get to trial. Counsel argued that the prejudice to Defendant was that he had been incarcerated during the entire pendency of the case, that being incarcerated for that length of time would cause anxiety concerns, and that the memories of witnesses might have faded as time passed.

The prosecutor responded that the State had done everything within its power to bring the case to trial. She noted the State had consistently announced ready for trial and that she had, since Defendant filed his speedy trial requests, filed motions to advance the case before her other cases. The prosecutor also argued the length of delay was not uncommon for the circuit and defense counsel had not pointed to anything specific about Defendant's incarceration that would cause him anxiety or concern. The prosecutor further noted that any impairment of memory would also affect witnesses for the State and make them more vulnerable to impeachment by the defense. Lastly, the prosecutor noted her case load was similar to that of other attorneys in her office.

The court asked defense counsel about the trial setting in August of 2013, and counsel replied that jury selection started on August 27th, but that there were too many ineligible jurors to proceed to trial and the case was therefore sent back for rescheduling. The court asked about the reason for the continuance from the next trial setting of October 17th, and the prosecutor said that she was trying a speedy trial case that was older than Defendant's.

The court stated that it had read the motion to dismiss and considered the arguments of counsel and it denied the motion based on what it had heard and read. The trial began with jury selection on December 4, 2013.

Defendant's motion for new trial included a claim that the court erred in denying his motion to dismiss for a speedy trial violation. The court denied the motion.

State v. Woods (Resp. Ex. E, ECF No. 15-5 at 6-9) (footnote omitted).[4]

---

[4]Footnote 2 of the Missouri Court of Appeals' opinion states that Petitioner's pro se motion for speedy trial received by the prosecutor on April 22, 2013, "appears to have been sent to the prosecutor only rather than filed with the [trial] court." (ECF No. 15-5 at 7, n.2.)

Respondent argues that the decision of the Missouri Court of Appeals denying this claim

on the merits is reasonable and entitled to deference. The Missouri Court of Appeals stated:

A defendant's right to a speedy trial is founded upon the Sixth Amendment of the United States Constitution and Mo. Const. Art. I, Sec. 18(a). State v. Taylor, 298 S.W.3d 482, 504 (Mo. banc 2009). These constitutional provisions provide equivalent protection for a defendant's right to a speedy trial. Id. The protections of the speedy trial provisions attach when there is a formal indictment or information or when actual restraints are imposed by arrest and holding to answer a criminal charge. State ex rel. Garcia v. Goldman, 316 S.W.3d 907, 911 (Mo. banc 2010).

In analyzing whether a defendant's rights to a speedy trial have been violated, courts consider and balance all of the circumstances and weigh four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. Taylor, 298 S.W.3d at 504. Not one of these four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant. Barker v. Wingo, 407 U.S. 514, 533 (1972). This test is obviously not designed to supply simple, automatic answers to complex questions, but rather, it serves as a framework for a difficult and sensitive balancing process. State v. Ferdinand, 371 S.W.3d 844, 851 (Mo. App. W.D. 2012) (overruled on other grounds by Sisco, 2015 WL 1094821). Thus, the right necessarily depends upon the facts and circumstances of each case. Id.

To trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial is presumptively prejudicial. State ex rel. Garcia, 316 S.W.3d at 911. Missouri courts have found that a delay of greater than eight months is presumptively prejudicial. Id.

Here, Defendant was arrested on March 13, 2012. Defendant's trial did not begin until December 4, 2013. Thus, the eight month time period was exceeded. Therefore, we must consider this delay along with the other three factors to determine whether the trial court erred in determining Defendant's right to speedy trial was not violated under the totality of the circumstances presented.

The second factor is the reason for the delay in bringing Defendant to trial. The burden is upon the State to accord an accused a speedy trial, and if there is delay it becomes incumbent upon the State to show the reasons that justify that delay. State v. Greenlee, 327 S.W.3d 602, 611-12 (Mo. App. E.D. 2010). Different weights are assigned to different reasons for a delay. Id. Delays deliberately intended to hamper the defense are weighed heavily against the State, however to the extent that any delays were due to the trial court's docket, those delays should be weighted less heavily against the State. Id. Trial court-related docket delays

should nevertheless be considered because the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Id.

Here, there was no evidence the delays were deliberate. The continuances that were granted were predominantly the result of the court not reaching the case on its docket or the attorneys being involved in other trials. Thus, these delays are weighed less heavily against the State. On one occasion, both the prosecutor and defense attorney were unavailable; thus, that continuance will not be weighed against the State. However, usually the prosecutor was the unavailable one, which weighs against the State, but not heavily. The record shows Defendant only objected to one of the continuances, the one requested by the State due to the prosecutor's scheduled vacation. Even if Defendant's requests for a speedy trial are construed as objections to further continuances, there were no more than five delays after the filing of those motions. One of those delays happened after the case was called for trial and an insufficient number of jurors survived strikes for cause for the case to proceed. Because that delay was not the State's fault, it will not be weighed against the State. To sum up, while there were delays, none of them were deliberate and the delays were not weighed heavily against the State.

The third factor is the defendant's invocation of his right to a speedy trial. Defendant was arrested March 13, 2012, but did not file his first request for a speedy trial with the court until almost a year later on May 7, 2013. We note waiting several months to assert the right to a speedy trial has been found to weigh against a defendant. Giammanco v. State, 416 S.W.3d 833, 840 (Mo. App. E.D. 2013).

Lastly, we must consider whether the delay in bringing his case to trial prejudiced Defendant . This is the most important factor in the speedy trial analysis and must be assessed in light of the interests protected by the right: (1) prevention of oppressive pretrial imprisonment; (2) minimization of the defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense. State v. Davis, 903 S.W.2d 930, 937 (Mo. App. W.D. 1995). The most important of these is whether the delay prejudiced the defendant's ability to make a defense. Id. To require reversal, any claimed prejudice resulting from delay must be actual prejudice apparent on the record or by reasonable inference. Id.

First, we note the only allegation made regarding the oppressiveness of the pretrial incarceration was its length. Defendant alleged only that the length and the pending charges caused him anxiety and concern. An assertion of anxiety by itself is insufficient to establish that actual prejudice occurred absent a showing of specific instances that weighed heavily on the defendant. State v. Mason, 428 S.W.3d 746, 752 (Mo. App. E.D. 2014) (overruled on other grounds by Sisco, 2015 WL 1094821). Defendant has not met his burden, and we see no evidence that Defendant suffered increased anxiety from the continuances in his case. Therefore, Defendant has not provided evidence of actual prejudice.

Lastly, Defendant contends his defense might be impaired because the memories of the witnesses might have faded in the almost two years that had passed between the incident and the trial. In State v. Scott, 348 S.W.3d 788,797 (Mo. App. S.D. 2011) (overruled on other grounds by Sisco, 2015 WL 1094821), a case involving a thirteen-year delay between arrest and trial, the court found a similar argument about faded memories to be speculative and also it noted it equally affected the State. Thus, it found the trial court did not abuse its discretion in finding the defendant was not prejudiced. Id.

Here, we find similarly that Defendant's defense was not impaired by the delay in bringing his case to trial. While Defendant raises, in his brief, several instances where he believes his defense was impaired, he did not raise these instances for the trial court or in his motion for new trial. Only allegations of error presented to the trial court will be considered on appeal. See State v. Davis, 348 S.W.3d 768, 770 (Mo. banc 2011). In any case, we find Defendant's allegations do not actually show his defense was impaired due to the delay in bringing the case to trial.

Therefore, we find the trial court did not err in denying Defendant's motion to dismiss his case for a violation of his right to a speedy trial. Point denied.

(Resp. Ex. E, ECF No. 15-5 at 9-13).

Petitioner asserts that the trial court and Missouri Court of Appeals erred in denying his speedy trial claim. Petitioner points to the 630-day delay between his arrest and trial, during which he was incarcerated, contends the State rather than Petitioner was the cause of the delay, and states that he asserted his speedy trial rights via a pro se motion in December 2012 and a motion filed by counsel in July 2013. Petitioner claims that being incarcerated while awaiting trial "caused [him] anxiety concerns and allowed the memories of the state witnesses to fade," specifically, that Officer Gates relied upon the police report at trial. (Reply, ECF 22 at 18.)

Petitioner's speedy trial claim in his federal habeas case is properly analyzed under the Sixth Amendment as determined by Barker v. Wingo, 407 U.S. 514 (1972) ("Wingo"). Under the Wingo test, reviewing courts must assess the length of delay, the reasons for the delay, the defendant's assertion of the right, and prejudice. Id. at 530.

The Court has reviewed the parties' briefs, the Missouri Court of Appeals' decision, and the underlying legal file, and finds the ground for relief to be without merit. Petitioner fails to establish that his constitutional right to a speedy trial was violated under the standard established by Wingo, 407 U.S. at 530. The Missouri Court of Appeals applied the correct standard, found the delay presumptively prejudicial, and then considered the remaining Wingo factors: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. The court recognized that much of the delay was attributable to the state and that Petitioner had asserted his speedy trial rights.

With respect to the prejudice prong of the Wingo test, the Supreme Court has explained:

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Wingo, 407 U.S. at 532. In its analysis of prejudice as a result of the trial continuances the Missouri Court of Appeals considered the length of time Petitioner was incarcerated, his assertion of anxiety and concern as a result, and his assertion that the memories of witnesses might have faded.

Petitioner fails to establish any interest that was prejudiced by the delay. His conclusory assertion in his reply brief that the delay caused him "anxiety concerns" fails to show that his anxiety and concern were excessively burdened within the meaning contemplated by Wingo. Petitioner's conclusory assertion that the State's witnesses' memories had faded, and his assertion that Officer Gates referred to the police report for her testimony, fail to establish that his ability to defend himself at trial was prejudiced by the delay.

The Court finds that the Missouri Court of Appeals' determination of this issue was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision

based on an unreasonable determination of the facts.  As a result, the Court will deny this ground for relief.

B.  Ground Three – Trial Court Error – Sufficiency of the Evidence

In Ground Three, Petitioner claims the trial court erred in denying his motion for acquittal at the close of all the evidence because the evidence was insufficient to support his conviction of unlawful use of a weapon, as the State failed to prove beyond a reasonable doubt that he exhibited the kitchen knife in an angry or threatening manner.

The Missouri Court of Appeals discussed the law and applied it to the facts relevant to this claim in its denial of Petitioner's direct appeal:

> We review the denial of a motion for judgment of acquittal the same as we review a challenge to the sufficiency of the evidence.  State v. Barker, 442 S.W.3d 165, 168 (Mo. App. W.D. 2014).  We must determine whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence.  Id.  On review, we accept as true all evidence and reasonable inferences from the evidence in the light most favorable to the verdict and reject all contrary evidence and inferences.  Id.  However, we may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inference.  Id.

> Section 571.030.1(4) provides a person commits the crime of unlawful use of a weapon if he knowingly exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner.  The threat does not depend on the victim's subjective perception of the danger involved.  State v. Williams, 779 S.W.2d 600, 603 (Mo. App. E.D. 1989).  It depends on an objective view of defendant's act.  Id.  No verbal threat is required; it is sufficient that the manner in which it was exhibited was threatening.  Id.

> Defendant contends the evidence was insufficient to support his conviction of unlawful use of a weapon because the State failed to prove beyond a reasonable doubt that he exhibited the kitchen knife in an angry or threatening manner.

> At trial, the victim testified and she was asked what happened when Defendant had the knife.  The victim responded, "I mean, he didn't threaten me with it, but it was being held in a manner where – I had on a tank top so my whole chest is open.  So I felt like if he's mad enough to the point he could stab me with it."  Next victim was asked to demonstrate with a pointer how Defendant was holding the knife.  She stated, "[l]ike this, like if you were going to stab somebody."

> Officer Gates also testified the victim indicated to him that Defendant had threatened to kill her with the knife if she called the police.
>
> We find there was sufficient evidence in the record to find Defendant guilty of unlawful use of a weapon because he displayed the knife in a threatening manner. Therefore, the trial court did not clearly err in denying Defendant's motion for judgment of acquittal at the close of all the evidence. Point denied.

(Resp. Ex. E, ECF No. 15-5 at 13-14.)

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson v. Virginia, 443 U.S. 307, 323 (1979). Under Jackson, a habeas petitioner is entitled to relief if a federal habeas court "conclude[s] that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015). In applying this standard, the federal habeas court does not re-weigh the evidence and must resolve any inconsistencies in favor of the prosecution. Id. Under the AEDPA, the Court may grant relief only if it finds the Missouri Court of Appeals' "conclusion that the evidence satisfied the Jackson sufficiency of the evidence standard both incorrect and unreasonable." Id. "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) (quoted case omitted).

Upon review of the entire record, the Court concludes the Missouri Court of Appeals' determination that the trial court did not err in denying Petitioner's motion for judgment of acquittal is entitled to deference. The Court cannot say on the record evidence adduced at the trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt on the unlawful use of a weapon count. See Nash, 807 F.3d at 897. The Missouri Court of Appeals'

17

decision was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts. Consequently, the Court denies this ground for habeas relief.

C. Ground Four – Ineffective Assistance of Trial Counsel – Failure to Object

In Ground Four, Petitioner claims his trial counsel was ineffective for failing to file a motion in limine and to object at trial to the admission of evidence that Petitioner possessed marijuana on the day in question, which he contends was inadmissible evidence of an uncharged crime. Petitioner raised this claim in his post-conviction motion and on appeal from the denial of the motion. The Missouri Court of Appeals denied relief on the claim.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all

too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u> at 105.

On post-conviction appeal, the Missouri Court of Appeals applied the <u>Strickland</u> standard and found that trial counsel's decision not to object to the testimony about Petitioner's marijuana use was reasonable because trial counsel had no meritorious reason to object. While evidence of uncharged misconduct is generally inadmissible under Missouri evidentiary law, "evidence of an uncharged crime that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible to permit a complete and coherent picture of the events that transpired." (Resp. Ex. I at 7) (cleaned up) (citing <u>State v. Clay</u>, 533 S.W.3d 710, 717 (Mo. 2017) (en banc)).

In the present case, the evidence at trial showed that while he was at the victim's apartment, Petitioner repeatedly grabbed the victim and threw her to the floor and told her she was "not getting out." (Resp. Ex. I at 8). The victim went into the bedroom and Petitioner followed, holding a knife in a manner such that he could have stabbed her with it. (<u>Id.</u>) Petitioner jumped on the bed and began choking the victim, pushing her head down so she could not breathe. (<u>Id.</u>) The victim tried to run out of the room but slipped, and Petitioner punched the victim multiple times in the head, hard and quickly. He then sat on the bed, where he smoked a cigarette and rolled a marijuana joint with the knife beside him. (<u>Id.</u>) While Petitioner was rolling the joint, the victim went into her daughter's room and was finally able to exit the apartment by jumping out the window. She ran into an alley where she called 911 on her cell phone. (<u>Id.</u>)

From this record, the Missouri Court of Appeals found that testimony relating to Petitioner's marijuana possession was logically and legally relevant to explain the sequence of events that surrounded the charged offenses, and was admissible to provide a complete and coherent picture of the events that transpired. (Resp. Ex. I at 9.)  It stated that testimony the Petitioner rolled a joint explained how the victim was eventually able to exit her apartment and call the police, shortly after Petitioner committed the acts underlying his charges for domestic assault and unlawful use of a weapon, and even though Petitioner told the victim she was "not getting out" and had repeatedly thwarted her efforts to escape the apartment.  (Id.)  The Missouri Court of Appeals found the testimony relating to Petitioner's possession of marijuana "highly probative" because it was "necessary to provide the jury with a complete understanding of the virtually unbroken chain of events that occurred that day," and its probative value outweighed any prejudicial effect.  (Resp. Ex. I at 9) (quoting State v. Thompson, 489 S.W.3d 312, 325 (Mo. Ct. App. 2016)).   The post-conviction motion court concluded that because the evidence was admissible under Missouri law, a motion in limine or objection to the contrary would have been non-meritorious, and therefore Petitioner failed to establish the performance prong of the Strickland test.

The Missouri Court of Appeals correctly identified Strickland as the standard to apply.  The court's application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it.  See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101.  Moreover, this Court may not second-guess the state court's finding that challenges to the admission of this evidence would have been unsuccessful under Missouri law.  See Arnold v. Dormire, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is

not the province of a federal habeas court to reexamine state-court determinations on state law

questions."). Consequently, the Court denies this ground for habeas relief.

D.  Ground Five – Ineffective Assistance of Trial Counsel – Failure to Seek Admission

In Ground Five, Petitioner claims that trial counsel was ineffective for failing to seek

admission into evidence a letter written by victim M.B. to Petitioner while he was incarcerated and

awaiting trial.  Petitioner raised this claim in his post-conviction motion and on appeal from the

denial of the motion.  The Missouri Court of Appeals denied relief on the claim.

The Missouri Court of Appeals summarized the facts relevant to this claim in its denial of

Petitioner's post-conviction motion:

> In this case, M.B. testified on direct examination about receiving letters
> from Movant while he was in jail, and those letters were admitted into evidence.
> One letter encouraged M.B. to stop responding to calls from police and prosecutors
> and urged her to contact his public defender to tell him she did not want to press
> charges.  Another letter asked M.B. to contact the prosecutor and drop the charges.
> And in yet another letter, Movant suggested M.B. suffered her injuries when she
> jumped out of the window; Movant urged M.B. to drop the charges against him and
> work with his lawyers; and Movant closed the letter with stating, "I need you to
> take this seriously and respond ASAP so I can coach you through this."  M.B.
> testified at trial that Movant's letters made her feel harassed and scared.
>
> After M.B. testified about the letters she received from Movant, the
> prosecutor asked M.B. during cross-examination if she had sent anything to
> Movant. M.B. replied she sent Movant a letter containing a picture, and her purpose
> in sending the letter was for her to get closure and tell Movant she did not hate him.
> The following then transpired during Counsel's cross-examination of M.B.:
>
> | [Trial Counsel]: | You talked earlier about how you had written [Movant] a letter. I believe you called it 'closure.' I'm going to ask you some things about that letter. In there, you told him that you were doing this because you wanted to put his ego in check? |
> |---|---|
> | [M.B.]: | No. |
> | [Trial Counsel]: | You're saying you didn't write that in your letter. |
> | [M.B.]: | I don't remember.  I'd like to see it. |

| | |
|---|---|
| [Trial Counsel]: | Your Honor, may I approach? |
| The court: | You may. |
| [Trial Counsel]: | I'm going to show you what I've marked Defendant's Exhibit[s] [A and B]. There are several pages here. |
| [M.B.]: | Where does it say I was trying to check his ego? I'm looking for that specifically. |
| [Trial Counsel]: | If you could give me a second, I will direct you, [M.B.]. If you go to the very next page, if you go to the very bottom of that. Can you read that last paragraph that you have down there that starts with 'you have.' |
| [M.B.]: | It says, 'You have this arrogance about you and it's a turn off and this thug ego has to be put in check.' |
| [Trial Counsel]: | So you're agreeing with me that you did tell him you were doing this to put his ego in check? |
| [M.B.]: | No, that's not what that says that I was doing. What, pressing charges to put his ego in check? Is that what you're insinuating? |
| [Trial Counsel]: | You wanted to put his ego in check, is that right? |
| [M.B.]: | No, I didn't say I wanted to. I said it needs to be. Not specifically by me. |

Trial Counsel then cross-examined M.B. about the contents of the letter, eliciting testimony from M.B. that she told Movant in the letter that: she was mad; he should call her; and she was going to send him some money.

The prosecutor then questioned M.B. further about the letter on re-direct examination:

| | |
|---|---|
| [The prosecutor]: | When you said that you put a picture in, is that attached to the letter? [ ] |
| [M.B.]: | Yes, ma'am. |
| [The prosecutor]: | What was that a picture of? |

| | |
|---|---|
| [M.B.]: | It was a picture that I previously drew.  Do you want me to show it? |
| [The prosecutor]: | So you drew it and what is it?  Can you describe what it is? |
| [M.B.]: | It's a flower.  It's two of them. |
| [The prosecutor]: | Why did you send, that? |
| [M.B.]: | I sent it because I had a lot of things happen in my life and it might not have been in my favor, or I might have did things irrationally, and it's still room to grow as a person.  We make mistakes.  We can still grow as a people, period.  From the letters that he wrote me, I felt like he was little mentally unstable, so I wanted him to know that, yeah, God still loves you. I don't hate you, but He still loves you.  And I don't want to see you hurt or incarcerated or anything like that, but we all can change with time; with counseling, therapy or whatever it may be.  So that was my intent on the flowers to say that you can grow as a person regardless of your surroundings or whatever. |
| [The prosecutor]: | I want you to look to the fifth page of that letter.  Do you see that first sentence there?  I believe it begins with, 'but when you'? |
| [M.B.]: | Yes. |
| [The prosecutor]: | Do you see that? |
| [M.B.]: | Yes, ma'am. |
| [The prosecutor]: | And in that letter you wrote, 'But when you hit me I was like' – |
| [M.B.]: | It was supposed to be it. |
| [The prosecutor]: | Go ahead. 'It was like'? |
| [M.B.]: | My world had come to an end. |

[The prosecutor]:      And in here, you also talked about hoping that he would grow, right?

[M.B.]:      Yes.

Counsel did not move to admit Exhibits A and B at trial.

During deliberations, the jury asked to see several items of evidence, including all correspondence between Movant and M.B. The court noted the only correspondence that had been admitted into evidence were those letters written by Movant to M.B., and the court submitted to the jury redacted copies of Movant's letters to M.B.

Later on during deliberations, the jury requested, "the defense exhibit of [M.B.'s] letter to [Movant] in jail, please." The court asked both parties for suggestions on how to respond. The prosecutor suggested the court tell the jurors they could only review items during deliberations that had been admitted and received into evidence and to be guided by the evidence as they recalled it. Trial Counsel agreed with the prosecutor's suggestion, and the court sent the jury a response substantially similar to the one agreed to by the parties.

(Resp. Ex. I, ECF No. 15-9 at 10-13) (footnote omitted).[5]

Petitioner contends the letter was critical to his defense case that M.B. took his money to pay her rent, and then called the police and falsely accused Petitioner of assaulting her to get out of paying money she owed to him. Petitioner asserts that M.B.'s statement in the letter, "You have this arrogance about you and it's a turn off and this thug ego has to be put in check," is evidence to show that M.B. had called the police to get her way, not because she was a real victim. (Reply at 22-23.) Petitioner also asserts that M.B.'s statement, "I was mad, you should call me, and I'm going to send you some money," also supports his defense. (Id. at 23-24.) Petitioner contends the result of the trial could have been different had the letter been admitted, because the jury asked to

---

[5]Footnote 5 of the Missouri Court of Appeals' opinion states that Defendant's Exhibits A and B were not part of the record on appeal because they were not admitted into evidence at trial or attached to the Rule 29.15 motion. The Court also stated that "a review of the transcript indicates the letter marked as 'Defendant's Exhibit B' was simply a copy of the letter marked 'Defendant's Exhibit A.' Accordingly, for purposes of this opinion, we will refer to M.B.'s letter to Movant as 'Exhibits A and B' or 'the letter.'" (ECF No. 15-9 at 11, n.5). Thus, one letter is at issue in Ground Five.

see it and "this obviously shows that the jury need[ed] the letter to determine some things that could have been helpful to Petitioner." (Id. at 24.)

The post-conviction motion court stated that "trial counsel's choices regarding the introduction of evidence are trial strategy that 'are virtually unchallengeable because these choices made in the course of representation are easy to scrutinize with the convenience of hindsight.' Goodwin v. State, 191 S.W.3d 20, 29 (Mo. 2006) (en banc)." (ECF No. 15-9 at 10.)  The court also stated to demonstrate ineffective assistance of counsel for failing to introduce evidence, Petitioner had to show, among other things, that the proposed evidence would have provided him a viable defense.  (Id.) (citing cases).

From the record set forth above, the Missouri Court of Appeals held trial counsel was not ineffective for failing to seek admission of the letter written by victim M.B. because Petitioner's allegations amounted to a speculative conclusion of prejudice rather than facts entitling him to relief or providing him with a viable defense, Petitioner did not overcome the strong presumption that it was reasonable trial strategy for trial counsel not to admit the letter into evidence because it contained a damaging statement about Petitioner hitting the victim, and trial counsel elicited testimony from the victim on cross-examination regarding the contents of the letter, so admission of the letter itself would have been cumulative to M.B.'s testimony.

The Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101.  Consequently, the Court denies this ground for habeas relief.

25

E.  Ground Six – Ineffective Assistance of Trial Counsel – Failure to Object to Closing Argument

In Ground Six, Petitioner claims that trial counsel was ineffective for failing to object and to move for a mistrial based on a portion of the prosecutor's closing argument.  Petitioner raised this claim in his post-conviction motion and on appeal from the denial of the motion.  The Missouri Court of Appeals denied relief on the claim.

The Missouri Court of Appeals summarized the facts relevant to this claim in its denial of Petitioner's post-conviction motion:

> During Trial Counsel's closing argument, she argued M.B. wanted control over Movant and that M.B. accused Movant of assaulting her when he tried to end their relationship.  Trial Counsel also attributed Movant's demeanor in court as a reaction to the fact that he had been falsely accused of serious charges, and Counsel characterized Movant as someone who only wanted the truth to come out.

> During rebuttal, the prosecutor argued Trial Counsel's theory was at odds with the evidence presented.  The prosecutor then made the following argument that Movant now complains of:

>> He thinks that he can manipulate his way out of this with you just like he thought that if he could talk to Officer Gates, that he could talk his way out of that.  It is clear from his conduct in this courtroom that he thinks he can control, that he's the one that has to be in control at all times.  He has to control the defense's arguments, he has to control my questions, he has to control when [M.B.] gets him a soda, when [M.B.] makes him dinner, whose paying the rent.  Every aspect of her life was controlled by [Movant], not the other way around, ladies and gentlemen.

(Resp. Ex. I, ECF No. 15-9 at 15.)

The Missouri Court of Appeals held trial counsel was not ineffective for failing to object and request a mistrial when the prosecutor characterized Petitioner as manipulative and controlling in closing argument because the record supported the characterization, and the challenged argument was in rebuttal to argument of Petitioner's trial counsel that the victim sought control over Petitioner and falsely accused him when he sought to break up with her.  The court concluded

any objection or motion for mistrial based on the prosecutor's rebuttal argument would have been

non-meritorious, and held that Petitioner failed to satisfy the performance prong of Strickland:

> Movant alleges Trial Counsel was ineffective for failing to object and for failing to request a mistrial to the prosecutor's comments during rebuttal on the grounds they were impermissible personal attacks designed to inflame and excite prejudices of the jury and they deprived Movant of a fair trial. We disagree.

> In this case, the record reflects that during the trial, Movant tried to make unsolicited statements while on the witness stand, and Movant requested the court to let him give the closing argument himself but the court refused to let him do so. Movant then announced in front of the jury at the conclusion of Trial Counsel's closing argument that he had other concerns Counsel had not addressed. In addition, during Movant's testimony, he stated that on the day of the incident involving M.B.: he told M.B., "bring me a soda"; he told M.B., "[c]all me when you're done cooking"; and he believed M.B. "knew or should have known that I wasn't going to pay the rent." It was permissible for the prosecutor to characterize Movant's conduct at trial and his interactions with M.B. about getting him a soda, making him dinner, and the payment of rent as controlling, because the record supports the characterization, and because a prosecutor has wide latitude in drawing inferences from the record when presenting his closing argument. See State v. Forrest, 183 S.W.3d 218, 228 (Mo. banc 2006); Murphy v. State, 512 S.W.3d 125, 131 (Mo. App. E.D. 2017); Jackson v. State, 205 S.W.3d 282, 290 (Mo. App. E.D. 2006).
> In addition, the prosecutor's characterization of Movant as controlling during rebuttal was made in retaliation to Trial Counsel's closing argument that it was M.B. who sought control over Movant and who had falsely accused him when he sought to break up with her. A prosecutor may retaliate to an issue raised by the defendant's closing argument even if the prosecutor's comment would otherwise be improper. State v. Sanchez, 186 S.W.3d 260, 265 (Mo. banc 2006); State v. Lewis, 466 S.W.3d 629, 633 (Mo. App. E.D. 2015).

> Based on the foregoing, any objection or motion for a mistrial based on the prosecutor's rebuttal argument would have been non-meritorious. Accordingly, Movant has failed to satisfy the performance prong of the Strickland test, and his claim for post-conviction relief in this point must fail. See Barnes, 506 S.W.3d at 410; Davis, 453 S.W.3d at 887-88; see also Zink, 278 S.W.3d at 175-76. Point three is denied.

Petitioner contends the Missouri Court of Appeals' decision on this point was unreasonable

because it was not based on inferences from either the evidence or his conduct during trial.

Petitioner argues the evidence showed M.B. stole his money to pay the rent and then falsely

accused him in order to avoid having to repay him, and was trying to manipulate and control him. (Reply at 28-29.) Petitioner also states he was not "charged with contempt to court. Meaning there is no evidence of any misconduct of Petitioner at his trial." (Id. at 29.) These unsupported arguments do not provide a basis for this Court to determine that the state court's application of the Strickland standard was unreasonable.

The Missouri Court of Appeals correctly identified Strickland as the standard to apply. That court's application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101. Further, this Court may not second-guess the state court's holding that the closing argument was permissible under Missouri law because the decision rests on state law grounds. See Arnold, 675 F.3d at 1086; Estelle, 502 U.S. at 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").

### Conclusion

For the foregoing reasons, the Court concludes that Petitioner Darrell J. Woods, Sr.'s Petition for Writ of Habeas Corpus must be denied in all respects.

On November 30, 2020, Petitioner filed a Motion for Medical Release, or in the Alternative an Order Reversing and Remanding His Case For a New Trial (ECF No. 25). In support, Petitioner asserts that he may be suffering from COVID-19 and has not received medical treatment he requested. The Court has no authority to order a state prisoner released for medical reasons so the Motion for Medical Release will be denied. Petitioner's Alternative Motion is denied for the reasons discussed with respect to the denial of his Petition for Writ of Habeas Corpus.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Darrell J. Woods, Sr.'s Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

28

**IT IS FURTHER ORDERED** that Petitioner's Motion for Medical Release, or in the Alternative an Order Reversing and Remanding His Case For a New Trial (ECF No. 25) is **DENIED** in all respects.

**IT IS FURTHER ORDERED** that Petitioner Woods has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

Dated this _10th_ day of December, 2020.